IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ESIS, INC.,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **COVENTRY HEALTH CARE WORKERS COMPENSATION, INC.,** | **NO.  13-2957** |
| **Defendant.** | |

| | |
|---|---|
| **ESIS, INC.,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **CONCENTRA INTEGRATED SERVICES, INC.,** | **NO.  13-2998** |
| **Defendant/Third Party Plaintiff,** | |
| **v.** | |
| **AETNA, INC., and AETNA WORKERS' COMP ACCESS, LLC,** | |
| **Third Party Defendants.** | |

**DuBois, J.**                                          **March 9, 2016**

**M E M O R A N D U M**

## I.     INTRODUCTION

This case arises out of the servicing of workers compensation claims by a variety of corporations, including the parties in this litigation. Presently before the Court is Aetna Inc. and Aetna Workers' Comp Access LLC's Motion to Dismiss Concentra Integrated Services, Inc.'s Second Amended Third Party Complaint. For the reasons that follow, the Court grants the Motion and dismisses the Second Amended Third Party Complaint with prejudice.

## II.      BACKGROUND

### A.  Procedural History

Plaintiff in the underlying action, ESIS, Inc. ("ESIS"), is a claims administrator that manages workers compensation claims on behalf of its clients, primarily employers and insurance companies. ESIS contracts with various managed care providers to provide medical services to workers compensation claimants. On March 22, 2013, ESIS filed a Complaint in the Court of Common Pleas of Philadelphia County against one of its contractual managed care providers, Coventry Health Care Systems, Inc., alleging breach of contract and other claims. On April 2, 2013, ESIS filed a similar Complaint in the Court of Common Pleas of Philadelphia County against another managed care provider, Concentra Integrated Services, Inc. ("Concentra"). Both actions were removed to this Court.[1] By Order dated November 5, 2013, the Court granted ESIS's Unopposed Motion to Consolidate and consolidated the two cases for case management, discovery, and all other pretrial matters.

The instant Motion involves only the Concentra action. By Stipulation dated September 3, 2015, ESIS, Concentra, and Coventry agreed to allow Concentra to implead Aetna Inc. ("Aetna") and Aetna Workers Comp Access LLC ("AWCA") (collectively "the Aetna defendants"). The Stipulation was entered as an Order of the Court on September 8, 2015, and Concentra filed its Third Party Complaint against the Aetna defendants on that date. Following a Stipulation and Order granting an extension of time to respond to the Third Party Complaint, on November 16, 2015, the Aetna defendants filed a Motion to Dismiss the Third Party Complaint.

---

[1] There is diversity jurisdiction under 28 U.S.C. § 1332. ESIS is a Pennsylvania corporation with its principal place of business in Pennsylvania. Coventry is a Delaware corporation with its principal place of business in Maryland. Concentra is a Massachusetts corporation with its principal place of business in Massachusetts. The amount in controversy in each case exceeds $75,000 exclusive of interest and costs.

On December 8, 2015, Concentra filed a First Amended Third Party Complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). On December 21, 2015, the Aetna defendants filed a Motion to Dismiss the First Amended Third Party Complaint. With the Aetna defendants' consent, by Order dated January 15, 2016, the Court granted Concentra leave to file a Second Amended Third Party Complaint, which was deemed filed on that date. On January 25, 2016, the Aetna defendants filed the Motion to Dismiss Concentra's Second Amended Third Party Complaint, presently before the Court.

### B.  Facts Alleged in Concentra' Second Amended Third Party Complaint

The facts of this case as relevant to the instant Motion and set forth in Concentra's Second Amended Third Party Complaint and attached exhibits are as follows. ESIS contracted with Concentra to provide managed care services for workers compensation claims, including bill review services. Concentra, in turn, entered into preferred provider organization ("PPO") agreements with medical providers, often through intermediary corporations, to obtain discounted rates for managed care services provided to workers compensation claimants.

In the underlying action, ESIS alleges that Concentra breached obligations under a Services Agreement. Second Amended Third Party Compl. ¶ 6 (hereinafter "Compl."). Pursuant to that Agreement, Concentra was to provide to ESIS, *inter alia*, "bill review services to capture reductions in fees for usual and customary and/or fee scheduled adjustments as well as application of [PPO] and pharmacy program discounts." Compl. ¶ 7. ESIS has asserted breach of contract and indemnity claims against Concentra for losses incurred by ESIS's customers as a

result of claims for additional compensation brought by medical providers located in Virginia.
Compl. ¶ 9.[2]

During the relevant time period, Concentra's wholly owned subsidiary, FOCUS
Healthcare Management, Inc. ("FOCUS") had an extensive network of healthcare providers that
Concentra's clients could access. Compl. ¶ 11.[3] In certain states, FOCUS contracted with other
healthcare provider networks to provide its customers with access to more providers. Compl.
¶ 12. In Virginia, FOCUS entered into a Master Business Agreement ("MBA") with AWCA, a
wholly owned subsidiary of Aetna, to provide access to the Aetna defendants' healthcare
provider network. Compl. ¶ 13; *see* Compl. Ex. C (hereinafter "MBA").

As relevant here, the MBA requires AWCA to provide FOCUS with certain
"Participating Provider Network Services." MBA § 2.1. The MBA includes a contractual
indemnification provision that compels each party to "indemnify and hold harmless the other
party . . . against any and all claims, lawsuits, judgment, settlements and expenses . . . caused by
the gross negligence or willful misconduct of the other party hereto or breach by the other party
hereto of its obligations under this agreement." MBA § 7.1. The MBA also has an "entire
agreement" provision that states

> The terms and conditions of this Agreement, and any amendment hereto, will be
> binding on the parties, their successors, or other transferees for the benefit of the
> other party and its Affiliates and their successors and assigns.

---

[2] The provider claims, which are not directly relevant to the instant Motion, are based on alleged
failure by ESIS to pay the correct rates to medical care providers due to improperly calculated
PPO discounts. Notice of Removal, Ex. 2, Compl. ¶ 13. ESIS alleges that the aggregate of these
medical provider claims exceeds $1.6 million and claims that $400,000 of those claims are
attributable to the actions of Concentra. Notice of Removal, Ex. 2, Compl. ¶ 16
[3] In 2007, Concentra sold FOCUS to Coventry. Compl. ¶ 11 n.2.

4

MBA § 9.11. "Affiliates" are defined by the MBA as "[a]ny company that (i) controls, (ii) is

controlled by, or (iii) is under common control with either party or its parent corporation." MBA

§ 1.1. In addition, the MBA contains a survival clause, which provides:

> The provisions . . . of this Agreement or any Schedule will survive the
> termination, cancellation, or expiration of this Agreement or Schedule. Such
> provisions will be binding on either party, its successors and assigns for the
> benefit of Aetna and its affiliates or subsidiaries and their successors and assigns.

MBA § 9.10.

Importantly, the MBA includes a binding arbitration provision in a section entitled

"Resolution of Disputes and Complaints," which necessitates, *inter alia*, that

> [i]n the event a dispute concerning this Agreement cannot be satisfactorily
> resolved except for temporary, preliminary, or permanent injunctive relief or any
> other form of equitable relief, the dispute will be settled by arbitration in
> accordance with the commercial rules and regulations of the American Arbitration
> Association then in effect . . . . The results of the arbitration will be final and
> binding on both parties.

MBA § 5.

### C. Allegations in Second Amended Third Party Complaint and Motion to Dismiss

In the Second Amended Third Party Complaint, Concentra argues that "if it is determined

that Concentra is liable to ESIS in the ESIS Case, it is by reason, in whole or in part, of the acts

and/or omissions" of the Aetna defendants. Compl. ¶ 10. Concentra further avers that "many of

the alleged claims being asserted by ESIS against Concentra . . . were actually the result of the

alleged negligent conduct of [the Aetna defendants] in providing inadequate/insufficient notice

to the healthcare providers purportedly in Aetna's Virginia Network about providers' enrollment

or re-enrollment in new PPO program(s)." Compl. ¶ 17. Concentra asserts four claims against the

Aetna defendants: (1) a claim for negligent misrepresentation; (2) a claim for negligence; (3) a

claim for "common law indemnity"; and (4) a claim for promissory estoppel.

In the Motion to Dismiss, the Aetna defendants argue that Concentra's claims are barred in their entirety by the mandatory arbitration clause in the MBA. To the extent that Concentra asserts that it is not bound by the MBA, the Aetna defendants maintain that Concentra's tort claims fail as a matter of law in the absence of a contractual agreement.

### III.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss.  To survive a motion to dismiss, a plaintiff must allege facts that "'raise a right to relief above the speculative level.'"  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions."  *Twombly*, 550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth" and must be disregarded.  *Iqbal*, 556 U.S. at 679.  The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief.  *Id.*  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

IV.     DISCUSSION

A.  **MBA and Mandatory Arbitration Provision**

In an attempt to avoid the MBA's mandatory arbitration provision, Concentra argues that it "was never a party to or assignee of the . . . MBA" and is "not subject to its terms." Concentra's argument is unavailing because Concentra is bound by the MBA as an affiliate of FOCUS.

In ruling on a Motion to Dismiss, "[w]here the written terms of the contract are not ambiguous and can only be read one way, the court will interpret the contract as a matter of law." *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994). The test for ambiguity is whether "the words of the contract are capable of more than one objectively reasonable interpretation . . . ." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011). Courts should read contracts "to avoid ambiguities if possible." *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 505 (E.D. Pa. 2014) (quoting *Nationwide Mut. Ins. Co. v. Chiao*, 186 Fed. App'x. 181, 185 (3d Cir. 2006)).

At the time the MBA was in force, Concentra was an affiliate of FOCUS. The MBA defines "affiliate" as

> Any company that (i) controls, (ii) is controlled by, or (iii) is under common control with either party or its parent corporation. A company will be deemed to control a company if it has the power to direct or cause the direction of the management or policies of such company, whether through the ownership of voting securities, by contract, or otherwise.

MBA § 1.1. Under this definition, Concentra is an affiliate of FOCUS because FOCUS was a wholly-owned subsidiary of Concentra, controlled by Concentra. Concentra admits it was an affiliate of FOCUS based on this definition. *See, e.g.*, Concentra's Resp., at 12 (referring to "Concentra's former status as an 'affiliate' of FOCUS").

7

Affiliates of AWCA and FOCUS, including Concentra, are bound by the MBA pursuant
to the entire agreement provision. MBA § 9.11. The entire agreement provision provides:

> The terms and conditions of this Agreement, and any amendment hereto, will be
> binding on the parties, their successors, assigns or other transferees for the benefit
> of the other party and its Affiliates and their successors and assigns.

MBA § 9.11. The only reasonable interpretation of this clause is that the MBA binds (1) "the
parties," (2) "their successors, assigns or other transferees for the benefit of the other party" and
(3) "its [either party's] affiliates and their successors and assigns." Concentra argues for an
alternative interpretation, that the MBA applies only to "[1] the parties [and] [2] their successors,
assigns, or other transferees for the benefit of the other party and its [the other party's] Affiliates
and their successors and assigns." Concentra's Resp., at 12. The Court concludes that
Concentra's ungrammatical alternative reading of the clause is unreasonable and does not render
the clause ambiguous.

This conclusion should end the inquiry, because the MBA would have been binding on
Concentra at the time of the alleged harm in this case—the failure to adequately enroll medical
providers in the Aetna PPO. However, the parties dispute whether some of the harm alleged by
ESIS to be caused by Concentra occurred after Concentra sold FOCUS. The Court therefore
briefly addresses the survival clause in the MBA and concludes that the MBA continues to bind
Concentra after of the sale of FOCUS. The survival clause states that the MBA is "meant to
survive the termination, cancellation, or expiration of this Agreement." MBA § 9.10. The clause
is

> binding on either party, its successors and assigns for the benefit of [AWCA] and its
> affiliates or subsidiaries and their successors and assigns.

MBA § 9.10. The only reasonable interpretation of this section is that the MBA remains binding
after termination of the agreement on (1) "either party," (2) "its [either party's] successors or

8

assigns for the benefit of [AWCA]," and (3) "its [either party's] affiliates or subsidiaries and their successors and assigns." Concentra argues that this clause could reasonably be interpreted to apply to "[1] either party [and] [2] its successors and assigns for the benefit of [AWCA] and its [AWCA's] affiliates or subsidiaries and their successors and assigns," and therefore that the clause would only apply if the Aetna defendants sought to enforce the MBA. Concentra's Resp., at 11. As with the entire agreement clause, the Court rejects Concentra's ungrammatical reading as a reasonable alternative and determines that the language of the survival clause is unambiguously binding on Concentra.

Even if Concentra's interpretation that would limit the survival clause to affiliates "seeking the benefit" of the MBA were reasonable, the Court concludes that Concentra is seeking the benefit of the MBA. Clearly, under the terms of the entire agreement provision, Concentra can enforce the MBA as an affiliate of FOCUS. As will be discussed below, Concentra, through its purported-tort claims, is seeking the benefit of the MBA's indemnification clause and other provisions.

Thus, the Court concludes that any contract claims asserted by Concentra as an affiliate of FOCUS are governed by the MBA. The Court determines that the mandatory arbitration provision in the MBA applies to any such contractual claims. As discussed below, while the Second Amended Third Party Complaint asserts no contract claims, Concentra can only obtain the relief it seeks from the Aetna defendants through contractual claims based on the MBA.

## B. Concentra's Tort Claims

The Aetna defendants argue that Concentra's tort claims must be dismissed in lieu of arbitration and in the alternative because they fail as a matter of law. The Court agrees and dismisses the tort claims with prejudice in this Court, but without prejudice to Concentra's right

9

to arbitrate all such claims. As explained above, the MBA is binding on Concentra and requires arbitration of any claims "concerning" the MBA. MBA § 5. As will be discussed below, each of the alleged tort claims directly concern the MBA because they are inextricably related to AWCA's contractual duties under that agreement. Furthermore, assuming *arguendo* that the MBA does not bind Concentra, the claims fail as a matter of law because, outside of the parties' contractual relationship, there is no independent legal duty to support Concentra's claims.[4]

### 1.   Negligent Misrepresentation and Negligence

The Aetna defendants argue that Concentra's negligent misrepresentation and negligence claims are barred by Pennsylvania's gist of the action doctrine and because Concentra has failed to identify any applicable duty of care, other than that created by the MBA. The Court agrees.

"Under Pennsylvania law, the 'gist of the action' doctrine 'precludes plaintiffs from recasting ordinary breach of contract claims into tort claims.'" *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 123 (3d Cir. 2010) (quoting *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa. Super. Ct. 2009)). The gist of the action doctrine bars tort claims that (1) arise solely from a contract between the parties, (2) where the duties allegedly breached were "created and grounded in the contract itself," (3) where "the liability stems from a contract," and (4) where the tort claim "essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (citations and quotations omitted). When "a defendant's alleged failure to perform its duty under the contract is transformed into a claim that this failure

---

[4] For purposes of this Memorandum, the Court applies Pennsylvania law. The MBA includes a choice of law provision that provides "[t]his Agreement will be governed by and construed in accordance with applicable Texas law." MBA § 9.13. However, the Court finds that there is no conflict between Pennsylvania and Texas law presented under the facts of this case. *See* Aetna Defs.' Mot. to Dismiss, at 12 n.4 ("Whether Pennsylvania or Texas law applies, the result here is the same.")

amounts to" negligence or fraud, the gist of the action doctrine bars the tort claim. *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 377 (E.D. Pa. 2009).

The Court determines that the Second Amended Third Party Complaint alleges tort duties that could only arise out of the MBA. Concentra avers that "the alleged claims being asserted by ESIS against Concentra in the ESIS Case were actually the result of the alleged negligent conduct of [the Aetna defendants] in providing inadequate/insufficient notice to the healthcare providers purportedly in Aetna's Virginia Network . . . ." Compl. ¶ 17. Concentra alleges in its negligent misrepresentation claim that it "reasonably relied on" the Aetna defendants' representations that "providers' claims submitted on behalf of customers of its clients such as ESIS were properly discounted." Compl. ¶ 32. Concentra's negligence claim is solely an allegation that the Aetna defendants "committed negligence by providing inadequate/insufficient notice to the health care providers . . . ." Compl. ¶ 35.

The only source of the Aetna defendants' alleged duty to notify health care providers, however, is the MBA, and not any aspect of tort law. Thus, Concentra's negligent misrepresentation and negligence claims amount to an attempt to enforce the MBA on behalf of its subsidiary, FOCUS. Concentra identifies no independent duty of care on the part of the Aetna defendants to provide such notice to the healthcare providers other than the MBA. The duty allegedly breached, the duty to adequately provide notice to the healthcare providers in Aetna's Virginia Network, is one that stems solely from the MBA and the success or failure of such a claim is wholly dependent on the scope of the Aetna defendants' contractual duties. [5]

Accordingly, Concentra's negligent misrepresentation and negligence claims are barred by the

---

[5] Concentra argues that some of the alleged negligent acts of the Aetna defendants occurred prior to the execution of the MBA and therefore that the MBA cannot apply to its tort claims. *See* Concentra Surreply, at 4. If so, there is no independent duty of care and all such claims fail.

gist of the action doctrine and the Court grants the Aetna defendants' Motion to Dismiss these claims.[6] Alternatively, even if the MBA were not binding on Concentra, the lack of a legal duty of care absent the MBA is fatal to Concentra's negligence and negligent misrepresentation claims.

## 2. Common Law Indemnification

The Aetna defendants argue that Concentra's common law indemnification claim must be dismissed due to the lack of legal relationship between the Aetna defendants and Concentra, outside of the MBA. The Court agrees.

"Indemnity is a common law remedy which shifts the entire loss from one who has been compelled, by reasons of some legal obligation, to pay a judgment occasioned by the initial negligence of another who should bear it." *Kinney-Lindstrom v. Med. Care Availability and Reduction of Error Fund*, 73 A.3d 543, 558 (Pa. 2013). "Under Pennsylvania law, indemnity is available only: (1) where there is an express contract to indemnify, or (2) where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts." *Allegheny Gen. Hosp. v. Philip Morris Inc.*, 228 F.3d 429, 448 (3d Cir. 2000) (citations and quotations omitted). Where there is an express contract to indemnify, common law indemnification is not available. *Eazor Express, Inc. v. Barkley*, 272 A.2d 893, 895 (Pa. 1971) ("[W]here . . . there is a written contract setting forth the rights and duties of the parties[,] . . . [t]he contract must then govern.").

---

[6] The cases cited by Concentra for the proposition that the gist of the action doctrine does not bar claims asserted by non-parties to a contract are inapposite in this case because Concentra is bound by the MBA as an affiliate of FOCUS and because Concentra is seeking to enforce the provisions of the MBA. *See Centimark Corp. v. Pegnato & Pegnato Roof Mgmt., Inc.*, Civil Action No. 05-708, 2008 WL 1995305, at *13 (W.D. Pa. May 6, 2008) (holding that individual officers of a corporation could not use gist of the action doctrine to bar tort claims in case in which contract did not purport to bind officers); *Fleet Nat'l Bank v. Boyle*, Civil Action No. 04-1277, 2005 WL 2455673, at *11 (E.D. Pa. Sept. 12, 2005) (concluding that individual defendants could be held liable for perpetration of a fraud scheme in the course of their employment despite contract between plaintiff and their employer).

Secondary liability is "constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible." *Sirianni v. Nugent Bros. Inc.*, 506 A.2d 868, 871 (Pa. 1986). "Pennsylvania courts have not extended common law indemnification to cases where the third party plaintiff—which stands in neither an employer/employee or principal/agent relationship to the third party defendant—is alleged to have breached a contract it entered with the plaintiff . . . ." *E. Elec. Corp. of N.J. v. Rumsey Elec. Co.*, Civil Action No. 08-5478, 2010 WL 2788294, at *3 (E.D. Pa. July 14, 2010).

In this case, Concentra has not identified any freestanding legal relationship between it and the Aetna defendants that would make the Aetna defendants secondarily liable, other than the MBA. Concentra's Second Amended Third Party Complaint avers that the Aetna defendants have "an obligation, based on common law indemnification, to indemnify Concentra for such losses as Aetna/AWCA were delegated bill review and network access services by Concentra in Virginia." Compl. ¶ 38. The "delegation" referred to in the Second Amended Third Party Complaint occurred through the MBA between FOCUS and AWCA. Thus, Concentra's common law claim is supplanted by the indemnification provision in the MBA, which the Court has already ruled applies to Concentra's claims. A claim pursuant to the MBA's indemnification provision would, as discussed above, be barred by the MBA's mandatory arbitration provision.

Furthermore, there is no principal–agent or employer–employee relationship between Concentra and the Aetna defendants. Assuming *arguendo* that there was no MBA, there would be no relationship between the parties from which a common law duty to indemnify could arise.

For these reasons, the Court grants the Aetna defendants' Motion to Dismiss the common law indemnification claim.

### 3.   *Promissory Estoppel*

The Aetna defendants argue that Concentra's promissory estoppel claims must be dismissed because of the existence of a binding contract between the parties. The Court agrees.

The doctrine of promissory estoppel is "invoked in situations where the formal requirements of contract formation have not been satisfied and where justice would be served by enforcing a promise." *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) *citing Cardmone v. Univ. of Pittsburgh*, 384 A.2d 1228, 1233 (Pa. Super. 1978). "Promissory estoppel allows the court to enforce a party's promise that is unsupported by consideration where (1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise." *Id.* If the parties formed an enforceable contract, a promissory estoppel claim is barred. *Id.*

In this case, Concentra alleges that the Aetna's defendants promised Concentra "that they would adequately and properly perform repricing and access to the Aetna Virginia Network for services for Concentra's customers such as ESIS in Virginia." Compl. ¶ 42. This promise was made in the context of the MBA between FOCUS and AWCA. Thus, there is a valid contract between Concentra's former subsidiary and the Aetna defendants, and Concentra is bound by the contract as an affiliate of FOCUS. Alternatively, Concentra's Second Amended Third Party Complaint does not allege any promise that the Aetna defendants made to Concentra other than the promise to perform the contractual duties of the MBA and therefore Concentra has failed to

allege a prima facie case of promissory estoppel. For these reasons, the Court grants the Aetna defendants' Motion to Dismiss the promissory estoppel claim.

### 4. Equitable Estoppel

In addition, the Court concludes that Concentra's tort claims in this case are barred by the arbitration provision in the MBA under the doctrine of equitable estoppel. A nonsignatory to a contract may be bound by an arbitration clause if the nonsignatory "embraces the agreement and directly benefits from it." *Griswold v. Coventry First LLC*, 762 F.3d 264, 272 (3d Cir. 2014). "A nonsignatory can 'embrace' a contract in two ways: (1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce terms of that contract or asserting claims based on the contracts other provisions." *Id.* (citations and quotations omitted).

As discussed with respect to each tort claim, Concentra is seeking to bind the Aetna defendants to the promise contained in the MBA: that AWCA would provide FOCUS's customers with access to its PPO network and properly enroll providers in that network. None of Concentra's claims are cognizable in the absence of the AWCA's promise to perform based on the MBA. The Court concludes that Concentra is equitably estopped from avoiding the arbitration provision because Concentra is seeking to enforce the provisions of the MBA against the Aetna defendants.

### C.  Leave to Amend

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The Court may dismiss a claim with prejudice based on "repeated failures to cure the deficiency by amendments previously allowed" or "futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

This is Concentra's third attempt to plead its claims against the Aetna defendants. The Court concludes, for the reasons discussed, that any future amendment would be futile in light of the MBA's mandatory arbitration provision. The Court will therefore dismiss the Second Amended Third Party Complaint with prejudice.

## V.    CONCLUSION

For the foregoing reasons, the Court grants the Aetna defendants' Motion to Dismiss Concentra's Second Amended Third Party Complaint and dismisses all of Concentra's claims against the Aetna defendants with prejudice. This dismissal is without prejudice to Concentra's right to proceed against the Aetna defendants in arbitration pursuant to the MBA. An appropriate order follows.